# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CITY OF SAN ANTONIO, | § | |
| *Plaintiff*, | § § § | |
| v. | § | Civil Action No. SA-09-CV-869-XR |
| TIME WARNER CABLE, SAN ANTONIO, L.P. d/b/a TIME WARNER CABLE, | § § § § | |
| *Defendant.* | § § | |

## ORDER ON MOTION FOR REMAND

On this day, the Court considered Plaintiff's Motion for Remand (Docket Entry No. 5), which would result in this Court's remand of this case to the 37th Judicial District Court, Bexar County, Texas. Having considered Plaintiff's motion, Defendant's response, and the relevant authority, the Court hereby GRANTS Plaintiff's motion for remand.

### Background

Prior to 2005, cable service providers negotiated cable franchise agreements with municipalities to obtain access to municipal rights-of-way. Beginning September 1, 2005, upon expiration of existing municipal cable franchise agreements, the state of Texas required cable providers to provide service in municipalities pursuant to State Issued Certificates of Franchise Authority (SICFA) approved by the Public Utility Commission of Texas. A SICFA authorizes a cable provider to use a municipal right-of-way provided that the provider pays a franchise fee of five percent of gross revenues as well as a contribution of one percent of gross revenues to support public, education, and government access channels. *See* TEX. UTIL. CODE §§ 66.005–.006 (Vernon 2008). Texas law authorizes municipalities to review the business records of the cable service

provider to ensure that the cable service provider is complying with its payment obligations. *Id.* § 66.005(b).

On December 31, 2005, the municipal franchise agreement between Defendant Time Warner Cable, San Antonio, L.P. d/b/a Time Warner Cable ("TWC") and Plaintiff City of San Antonio ("the City") expired. On January 1, 2006, TWC began operating in San Antonio under a SICFA authorized by the Public Utility Commission of Texas. The City has sought to gain access to business records pursuant to the statute so that it may audit the fees and contributions it has received from January 1, 2006, to December 31, 2008.

## Procedural History

On September 25, 2009, the City of San Antonio filed a petition for a writ of mandamus in the 37th Judicial District Court, Bexar County, Texas, to compel TWC to produce its business records in compliance with the statute. Within thirty days of being served with the lawsuit, Time Warner Cable removed the case to this Court based on the Court's diversity jurisdiction. (*See* Notice of Removal (Oct. 26, 2009) [Docket Entry No. 1].) TWC declared that it is a Delaware corporation with its principal place of business in New York and noted that the City is a Texas municipality. (*Id.* ¶¶ 2–7.) TWC further contended that the dispute results in an amount-in-controversy that meets the statutory minimum of $75,000. (*Id.* ¶¶ 8–9.)

The City filed a motion for the Court to remand the case to state court. (Pl.'s Mot. for Remand (Oct. 30, 2009) [Docket Entry No. 5] ("Mot.").) The City concedes that the parties are diverse but contests the amount in controversy. (*Id.* at 2–5.) Plaintiff also seeks reimbursement for costs and attorney's fees incurred as a result of contesting the removal pursuant to 28 U.S.C. § 1447(c). (*Id.* at 5.) TWC responded that the City has not carried its burden to prove to a legal

certainty that the Court lacks subject matter jurisdiction. (Def.'s Resp. to Pl.'s Mot. for Remand (Nov. 16, 2009) [Docket Entry No. 10] ("Resp.").) In the alternative, TWC requests that the Court allow limited remand-related discovery to determine whether the City's audit rights are worth more than $75,000. (*Id.* at 9.) The City replied that because TWC failed to meet its burden to show that the amount in controversy exceeds the jurisdictional minimum, the City did not need to show beyond its petition that the amount in controversy is less than $75,000. (Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Remand (Nov. 24, 2009) [Docket Entry No. 11] ("Reply").)

**Legal Standard**

District courts have subject matter jurisdiction over diversity suits where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Generally, the removing party has the burden of proving by a preponderance of the evidence that either: (1) it is facially apparent from the petition that the claim exceeds $75,000, or (2) by setting forth summary-judgment type evidence that supports the requisite finding. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). If a defendant shows by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum, a plaintiff seeking remand must show that "as a matter of law, it is certain that [the plaintiff] will not be able to recover more than the damages for which [the plaintiff] has prayed in the state court complaint." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995), *cert. denied*, 516 U.S. 865, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995). Because it is presumed that a federal court lacks jurisdiction until such jurisdiction has been proven, any doubt as to federal subject mater jurisdiction is to be resolved in favor of remand. *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

**Analysis**

*A. Amount in Controversy*

In this case, the City filed a petition for a writ of mandamus to compel the production of business records pursuant to Texas law. The City's request for mandamus made no monetary demand. In its Notice for Removal, TWC included a copy of a Payment Summary Sheet that details the franchise fees paid to the City from 2006 through 2008. (Notice of Removal ex. B.) Each franchise payment alone is in excess of $75,000. TWC states that the City has not disputed that TWC has paid approximately $40 million in franchise fees. (Resp. at 3.) Defendant further contends that the City has not carried its burden to prove to a legal certainty that the Court lacks subject matter jurisdiction, stating that the consequences that may result from the litigation exceed the minimal jurisdictional requirement and that the City has not produced evidence that its audit rights have no value. (*Id.* at 6–8.)

The removing party bears the burden of establishing that the amount in controversy exceeds the jurisdictional minimum. *Manguno*, 276 F.3d at 723. Time Warner Cable has not met that burden. While it is undisputed that TWC has paid millions to the City, those amounts are not the subject of this controversy. The City is not challenging the validity of those payments nor is it seeking unpaid taxes and fees. The City merely seeks an audit of financial records in accordance with state law. As a result, the $40 million paid in taxes do not represent "the direct pecuniary value of the right which the plaintiff seeks to enforce or protect." *See Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). TWC has therefore not proved by a preponderance of the evidence that the amount in controversy exceeds $75,000. Having not established by a preponderance of the evidence that the amount in controversy is greater

than $75,000, the City need not establish by a legal certainty that the amount in controversy is below the jurisdictional limit of this Court. Morever, the right that the City seeks to enforce or protect is its statutorily authorized right to audit financial records. The City seeks only an audit, "the results of which are presently unknown. For that reason, no one can say how much money may be ultimately claimed" by the City (if any). *See DiTolla v. Doral Dental IPA of N.Y.*, 469 F.3d 271, 276 (2d Cir. 2006). This differs from the situation where the plaintiff seeks a determination of liability under a contract in which the potential liability serves as the amount in controversy. *See Hunt*, 432 U.S. at 347.

TWC points to *City of New Orleans v. AT&T Wireless PCS, LLC*, Nos. Civ.A. 03-0731, Civ.A. 03-0732, 2003 WL 21305327, at *1 (E.D. La. June 4, 2005, June 5, 2005), in support of TWC's response to the City's motion for remand. In *City of New Orleans*, the city filed suit against the defendants for delinquent sales taxes over a period of four years. *Id.* at *1. AT&T submitted a declaration stating that it had sold over $500,000,000 worth of products for two of the four years in question, and if the city sought to collect taxes based on those sales, the amount in controversy would be $110,564. *Id.* at *2. The City of New Orleans stated it could not provide any information regarding an amount in controversy because the amount of the tax liability could only be determined by reference to documents in the custody of AT&T; only an audit would allow the city to specifically allege monetary damages. *Id.*

The situation before the Court in this case is distinguishable from *City of New Orleans*. First, New Orleans filed suit for unpaid taxes while the City of San Antonio has filed suit to enforce a purported right to conduct a statutorily authorized audit. New Orleans's allegations involved a claims that AT&T did not pay taxes. Here, San Antonio has made no such claim. This is a suit for

the examination of records and not a substantive claim to recover unpaid taxes.[1]  Second, AT&T declared the specific amount that it would owe if New Orleans were to have succeeded on its claim while TWC has provided no such declaration in this case.  TWC has provided an undisputed summary of payments that it has made to the City from 2006 through 2008.  This does not equate to a declaration of taxes and fees to be paid (if any) following an audit.  Third, in *City of New Orleans*, New Orleans failed to show to a legal certainty that the court lacked subject matter jurisdiction while San Antonio does not bear that burden in this case.  AT&T had established by a preponderance of the evidence that the amount in controversy would exceed $75,000, which required New Orleans to demonstrate to a legal certainty that the amount in controversy was $75,000 or less.  Here, Time Warner Cable has not established by a preponderance of the evidence that the amount in controversy is greater than $75,000, which means that the City is not required to show to a legal certainty that the Court lacks subject matter jurisdiction.[2]

B. *Remand-Related Discovery*

---

[1] The City of New Orleans was asserting a right to collect what it believed to be unpaid taxes that AT&T established would exceed $75,000.  Here, an audit could reveal an underpayment of taxes and fees, which could then result in a subsequent and separate action for the City to recover an amount above or below $75,000; an overpayment of taxes and fees, which could then result in a subsequent and separate action for Time Warner Cable to recover an amount above or below $75,000; or confirm the amounts already paid.

[2] TWC's reliance on *Aus-Tex Exploration, Inc. v. Res. Energy Techs.*, 646 F. Supp. 2d 874 (W.D. Ky. 2009), is similarly misplaced.  In that case, the *plaintiff* filed suit in federal court.  *See id.* Under the assumption that "the plaintiff is the master of the claim," the Court required the defendant to make a showing of bad faith, *i.e.*, to demonstrate "to a legal certainty that the original claim was really for less than the amount-in-controversy requirement."  *Id.* (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993), *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008)) (internal quotation marks omitted).  Here, aside from the difference in procedural posture, TWC has not established that the amount in controversy meets the jurisdictional minimum for this Court.  Therefore, the City does not have the burden of establishing that its claim is for less than the amount-in-controversy requirement.

TWC requests that the Court allow remand-related discovery to determine whether the City's audit rights are worth more than $75,000. Time Warner Cable requests:

> Documents sufficient to determine the amount of funds the City has allocated to conduct its audit of TWC-SA's business records;
> Hourly rates charged to the project for the 2,000 man hours estimated to complete the audit; and
> The amount of additional franchise fees the City has collected following similar audits for the years 2005 to the present.

(Resp. at 9.) "The district court . . . may allow limited remand-related discovery, and conduct a summary judgment type inquiry thereupon." *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005). No such discovery is required in this case. The true object of this litigation is the ability of the City to exercise its purported right to conduct an audit and not the value that it could receive following an audit. The amount of money the City spends on an audit, any hourly rates, or the amount of additional franchise fees that the City collects from similar audits are irrelevant in determining the amount in controversy. Courts have not based the evaluation of the amount in controversy on the cost of an audit in cases that involve a party's request for an accounting or audit to evaluate an indeterminable amount. *See, e.g., DiTolla v. Doral Dental IPA of N.Y.*, 469 F.3d 271, 276 (2d Cir. 2006); *New Orleans ILA Pensioners Ass'n, LLC v. Katica*, No. 08-1625, 2008 WL 2651456, at *2 (E.D. La. July 7, 2008) (remanding case to state court where state court petition states plaintiff has not been provided with accounting, rendering the amount in controversy unknown). As a result, the City's audit or the amount it spends to conduct an audit is not relevant in evaluating the amount in controversy, and the Court denies TWC's request for remand-related discovery.

C. Attorney's Fees

The City states that it has incurred costs and expenses in moving to remand this case to state

court. "An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "There is no automatic entitlement to an award of attorney's fees." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). Instead, the courts look to the objective merits of the defendant's case at the time of removal. *Id.* In other words, regardless of whether the removal was made in subjective good faith, a court may still deny attorney's fees if "the defendant had objectively reasonable grounds to believe the removal was legally proper." *Id.* at 292–93. Because this Court can see how the Defendants had objectively reasonable grounds to believe that removal was legally proper based on the amount in controversy, the Court declines to award attorney's fees to the City.

**Conclusion**

Pursuant to the Court's authority under 28 U.S.C. § 1447, the Court GRANTS Defendant's Motion for Remand. Plaintiff's request for discovery is DENIED, and Defendant's request for attorney's fees is likewise DENIED. The Court hereby REMANDS this case to the 37th Judicial District Court, Bexar County, Texas. The Clerk is instructed to close this case.

It is so ORDERED.

SIGNED this 11th day of December, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE